IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | | |
|---|---|---|
| JAMES PEAL, JR., | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civ. Case No. 05-4071-CV-C-NKL |
| | ) | Crim. Case No. 02-4026-CR-C-NKL |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**ORDER**

Pending before the Court is James Peal's ("Peal") Motion to Vacate, Set Aside and Correct Sentence pursuant to 28 U.S.C. § 2255 [Doc. # 1]. For the reasons set forth below, the Court denies Peal's Motion.

**I.      Background**

   **A.      The Indictments**

On May 23, 2002, the Grand Jury issued a four-count Indictment against Peal. Count I of the Indictment charged Peal with conspiracy to distribute and possess with intent to distribute cocaine and cocaine base. Count II charged Peal with possession with intent to distribute cocaine. Count III alleged possession with intent to distribute cocaine base. Count IV charged distribution of cocaine base. Count I alleged a time period of approximately May 1, 1999, through May 26, 1999. The remaining three counts charged a time period of approximately May 24, 2001.

Subsequently, on November 7, 2003, the Grand Jury issued a Superseding

1

Indictment against Peal.  The Superseding Indictment contained the same four counts as the original Indictment.  However, the alleged date of the offense in Counts II-IV was changed from May 24, 2001, to May 24, 1999.

> B.    Peal's Plea Agreement

On December 16, 2003, the Government and Peal entered into a Plea Agreement wherein Peal agreed to plead guilty to the conspiracy charge in original Indictment (Count I) and the Government would dismiss the remaining counts, including the Superseding Indictment in its entirety.

The Plea Agreement reflected that the Government was made aware of Peal after the homicide of Kandi Nickens ("Nickens").  When officers searched Nickens's home as part of the homicide investigation, they found a bag containing 255.09 grams of powder cocaine, 12.84 grams of cocaine base, and an electronic scale.  The bag containing the drugs had Peal's fingerprint on it.  During a subsequent interview, Peal admitted to selling cocaine out of Nickens's home and he stated that he had sold an 8-ball of "crack" from the house on May 24, 1999, for $150.  Peal stated that he stayed with Nickens periodically and he had a key to her house.  In a later interview, Peal identified Nickens's home as the "stash house" where he stored his drugs.

In addition to Peal's concession, the Government interviewed a cooperating witness ("CW") who stated that he bought an 8-ball of "crack" from Peal on May 24, 1999, out of Nickens's home and that he had purchased cocaine from Peal at Nickens's house when she was present approximately 9-10 times.  CW stated that each of his

2

purchases was an 8-ball, which is the equivalent of 3.5 grams. Also, Nickens's sister told officers that Peal stored drugs at the home and that her sister was aware of the drugs in the home.

Regarding sentencing, the parties further stipulated in the Plea Agreement that Peal's base offense level would be at least 26 with Peal reserving the right to object to any base offense level that exceeded 30. Peal acknowledged that his relevant conduct may result in an increase in the base offense level. The Court conducted a change of plea hearing on December 16, 2003.

### C. Peal's PSIR

After Peal entered his guilty plea, the United States Probation Office prepared a Pre-Sentence Investigation Report ("PSIR"). In the PSIR, Peal was assigned a base offense level of 32 based on the quantity of drugs involved with his offense. The total quantity was 302.93 grams of cocaine and cocaine base and the sum total included the (1) quantity of drugs found in Nickens's home that were directly attributable to Peal (267.93 grams); (2) the 3.5 grams of cocaine that Peal admitted to selling from Nickens's home on May 24, 1999; and (3) 31.5 grams of cocaine that CW stated that he purchased from Peal out of Nickens's home over the course of 9-10 purchases (3.5 grams each purchase x 9 purchases = 31.5 grams). The latter two categories were included as relevant conduct under the sentencing guidelines.

With the starting point of a base offense level of 32, the PSIR gave Peal credit for accepting responsibility (a 2-point reduction) and an additional 1-point reduction of the

offense level pursuant to section 3E1.1(b) under the guidelines. Thus, the adjusted base offense level was 29. Based on Peal's past convictions, he was assessed a Criminal History Category III and the corresponding sentencing range under the guidelines was 108-135 months.

The Probation Office advised the Court to consider enhancing Peal's sentence because a Criminal History Category of III did not adequately reflect his criminal history. Specifically, it did not account for his three prior felony convictions or the fact that his criminal career spanned over 30 years. Moreover, due to the age of some of his previous non-felony convictions, four of those prior sentences did not garner any criminal history points. Based on this information, the PSIR contemplated that a Criminal History Category III did not adequately reflect Peal's criminal proclivities.

Peal's counsel objected to attributing the additional 35 grams of cocaine as relevant conduct under the guidelines. Instead, Peal's counsel urged the Court to cap his base offense level at 30 and then make the three-point adjustment contemplated by the PSIR, thereby lowering the base offense level to 27. Had the Court adopted Peal's counsel's argument, the sentencing guidelines range would have been 87-108 months (base offense level of 27 with a Criminal History Category III).

### D. Peal's Sentencing

On May 4, 2004, the Court conducted a sentencing hearing. The Government provided testimony from CW who testified that Peal sold him a total of 35 grams of cocaine, which was the sum of 3.5 grams on May 24, 1999, and 31.5 total grams over 9-

4

10 transactions. Based on this relevant conduct, the Court found that the 35 grams should be attributed to Peal in accordance with the federal sentencing guidelines. The Court adopted the base offense level of 32 and gave Peal the recommended three-point adjustment, which lowered the base offense level to 29. The Court also adopted the Criminal History Category III. The Court sentenced Peal to the low end of the applicable guidelines range to 108 months of imprisonment and five years of supervised release.

In his pending Motion, Peal asserts several grounds for relief, all of which are grounded in his counsel's alleged ineffective assistance. The Government opposes Peal's Motion.

## II.     Evidentiary Hearing

On a motion to vacate, a movant is entitled to an evidentiary hearing when the facts alleged, if true, would entitle him to relief. *Payne v. United States*, 78 F.3d 343 (8th Cir. 1996) (citations omitted). However, a claim may be dismissed without an evidentiary hearing if the claim is inadequate on its face. *Id*. Moreover, a district court need not hold an evidentiary hearing in a section 2255 case when the files and records conclusively show that the movant is not entitled to relief. *See Bradshaw v. United States*, 153 F.3d 704 (8th Cir. 1998). After reviewing the records and files, the Court concludes that all of Peal's claims can be fully and fairly evaluated on the existing record and no evidentiary hearing is necessary.

## III.    Discussion

To establish ineffective assistance of counsel, a movant must satisfy a two-part

test. First, the movant must prove that his counsel's representation was deficient, and second, that the deficient performance prejudiced his case. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A counsel's performance is deficient if he or she "failed to exercise the customary skills and diligence that a reasonably competent attorney would have exhibited under similar circumstances." *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996) (internal quotation omitted).

The prejudice component "focuses on the question [of] whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Id.* Further, "[w]hen considering whether the defense suffered prejudice, a court must determine whether there is a reasonable probability (sufficient to undermine confidence in the outcome) that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Blankenship v. United States*, 159 F.3d 336, 338 (8th Cir. 1998). This two-part test also applies where a defendant challenges a guilty plea based on the counsel's purported ineffective assistance. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985).

### A. Calculation of Peal's Base Offense Level

Peal first alleges that his counsel was deficient for failing to object to his base offense level of 32 that was the result of the 35 additional grams of cocaine that was attributed to him as relevant conduct. Specifically, Peal argues that his base offense level

6

was improperly calculated because it included the amount of cocaine that was included in his underlying conviction. However, the sentencing guidelines provide that the base offense level includes "all acts and omissions committed, aided, abetted" by the defendant and all criminal activity undertaken "during the commission of the offense." U.S.S.G. § 1B1.3(a). The comment to this section indicates that the defendant is responsible for "all quantities of [controlled substances] with which he was directly involved . . . ." *Id.* at Commentary ¶ 2. Thus, it was not inappropriate to include the amounts of the underlying cocaine set forth in the Indictment when calculating the base offense level. Even assuming Peal's counsel's conduct was deficient, Peal cannot demonstrate the prejudice prong of *Strickland* analysis because there was no error in the underlying calculation and his counsel's conduct could not have altered the outcome of the calculation. Peal's first ground for relief is denied.

### B. Sixth Amendment Challenge

Peal also challenges his counsel's conduct with respect to the Supreme Court's decisions in *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531 (2004).

In *Apprendi*, the Court held: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime *beyond the prescribed statutory maximum* must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490 (emphasis added). Thus, under the Court's holding in *Apprendi*, facts supporting a sentencing enhancement need to be submitted to a jury only if the enhanced sentence

7

exceeds the maximum sentence found in the applicable federal statutes. Peal was convicted of violating 21 U.S.C. §§ 841(a)(1), (b)(1)(C), and 846. Section 841(b)(1)(C) provides that the maximum penalty is 40 years' imprisonment. In the instant case, Peal was sentenced to 108 months of imprisonment; thus, his sentence was well within the statutory maximum set forth in the statutes. Accordingly, there is no *Apprendi* error and his counsel's conduct was not deficient. *See United States v. Kamerud*, 326 F.3d 1008, 1013 (8th Cir. 2003), *cert. denied*, 540 U.S. 1094 (2003) (no *Apprendi* violation where sentence under section 841(b)(1)(C) fell within statutory maximum of 20 years without reference to drug quantity).

Regarding *Blakely*, the Government argues that it is inapplicable because *Blakely* was not yet decided when Peal was sentenced.[1] However, *Blakely* was decided in January 2004 and Peal was not sentenced until May 2004; therefore, *Blakely* may be applicable to Peal's sentencing. Although *Blakely* was decided in January 2004, the Supreme Court did not definitively apply its holding to the federal sentencing guidelines until the Court issued its decision in *United States v. Booker*, 125 S. Ct. 738 (2005). Thus, at the time of Peal's sentencing, it was not clear that *Blakely* would apply to the federal sentencing guidelines and his counsel's failure to challenge his sentencing enhancements based on *Blakely* cannot conclusively be held to have fallen below the standard of a "reasonably

---

[1] Earlier in its brief, the Government incorrectly asserts that Peal was sentenced on June 29, 2001. *See* Opp. [Doc. # 7] at p. 2. In the argument portion of its brief, the Government asserts Peal was sentenced on December 16, 2003. *Id.* at p. 11. Neither assertion is correct because the Court did not sentence Peal until May 2004--approximately four months after *Blakely* was decided.

competent attorney." *Apfel*, 97 F.3d at 1076.

Nonetheless, even assuming Peal's counsel's conduct was deficient in failing to raise *Blakely*, Peal cannot satisfy *Strickland*'s prejudice prong. The import of *Booker* was to declare portions of the federal sentencing guidelines unconstitutional and, in effect, transform them from being mandatory to an advisory regime. In the context of plain error challenges to sentences imposed in violation of *Blakely* and *Booker*, the Eighth Circuit requires a showing of prejudice, which means a defendant must demonstrate "a reasonable probability that [the defendant] would have received [a] more favorable sentence[] without the *Booker* error, under an advisory guideline scheme." *United States v. Lopez*, 414 F.3d 954, 963 (8th Cir. 2005) (citing *United States v. Pirani*, 406 F.3d 543, 552 (8th Cir. 2005)). This standard is consistent with the prejudice prong set forth in the ineffective assistance of counsel context, which mandates that "[w]hen considering whether the defense suffered prejudice, a court must determine whether there is a reasonable probability (sufficient to undermine confidence in the outcome) that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Blankenship*, 159 F.3d at 338.

Although the Eighth Circuit has not articulated a standard for finding prejudice in the context of ineffective assistance of counsel claims under *Booker* and *Blakely*, it is logical to apply the "but for" standards articulated above that require a demonstration that the counsel's deficient conduct detrimentally impaired the outcome of the proceedings and that the defendant would have received a more lenient sentence had the sentencing

9

court treated the guidelines as advisory rather than mandatory.

In the Eighth Circuit, the fact that a court sentenced a defendant at the low end of the calculated guidelines is not sufficient evidence that the defendant would have received a more lenient sentence under an advisory guideline regime. *Lopez*, 414 F.3d at 963; *Pirani*, 406 F.3d at 553. Moreover, merely expressing dislike for the guidelines or empathy for the defendant's plight under the guidelines is also not sufficient to demonstrate a reasonable probability that there would be a different outcome. *Lopez*, 414 F.3d at 963-64 (court's statement that guidelines were "harsh" but noting that defendant had lengthy criminal history insufficient); *United States v. Hill*, 410 F.3d 468, 473 (8th Cir. 2005) (court's statement that it took "no pleasure" in imposing life sentence was insufficient where court did not otherwise express that it believed sentence was unfair or unwarranted); *Pirani*, 406 F.3d at 553 n. 6 (court's stated dislike for the guidelines insufficient).

In the instant case, Peal has not presented any evidence that the Court believed his sentence was unjust or unfair. Therefore, there is no basis for finding that Peal would have fared any better had the guidelines been advisory instead of mandatory. As a result, he cannot satisfy the prejudice prong of *Strickland* and his second ground for relief based on ineffective assistance of counsel is denied.

### C. Whether Peal's Plea Was Intelligent and Voluntary

Peal asserts that his attorney wrongfully advised him that he may be considered a career offender under section 4B1.1 of the guidelines because of his previous convictions

10

for Second Degree Assault and Unlawful Possession of a Concealable Firearm.  Peal asserts that his attorney's advice coerced him into pleading guilty and his plea was involuntary and unintelligent as a result.

Even assuming his counsel's conduct was deficient, Peal cannot satisfy the prejudice prong of *Strickland*.  Peal's attorney *overestimated* his potential culpability under the guidelines by anticipating that Peal would be treated as a career offender.  In the end, Peal was not subject to the provision and he submitted his guilty plea even though he believed he would be subject to a stiffer penalty.  In this fact scenario, the Court would be hard-pressed to find that Peal was prejudiced when his counsel's error ultimately worked to his benefit.  Moreover, Peal's claim that his attorney was ineffective at the plea stage is contrary to the testimony which Peal gave at his plea hearing.

While his counsel's purported miscalculation may now be an easy crutch to lean on and claim his plea was unintelligent, the reality is that Peal benefitted from his counsel's alleged misreading of the guidelines and the Court declines to find that he suffered prejudice under *Strickland*.  Peal's third point for relief is denied.

### D. Sufficiency of the Evidence Supporting Peal's Conviction

In his fourth ground for relief, Peal claims ineffective assistance of counsel because allegedly there was insufficient evidence to demonstrate that he was guilty of conspiracy to possess with intent to distribute cocaine base and crack cocaine.

Peal correctly states that a buyer-seller relationship cannot be the basis of a conspiracy charge.  *See United States v. Pizano*, 421 F.3d 707, 2005 WL 2086426 (8th

Cir. Aug. 31, 2005) (citing *United States v. Prieskorn*, 658 F.2d 631, 634 (8th Cir. 1981)). However, the Government in the Indictment did not allege a conspiracy between Peal and the CW; instead, the Government alleged a conspiracy between Peal and Nickens and there is ample evidence to support a finding that Peal and Nickens had an agreement whereby he could sell drugs out of her home. Officers discovered drug distribution equipment in Nickens's home (the electronic scale) and Peal himself admitted that he sold drugs out of the residence and he used her home as a "stash house" to store his drugs. Moreover, both CW and Nickens's sister gave information suggesting that Nickens was aware of Peal's conduct.

Although their agreement may not have been explicit, a clear agreement to distribute cocaine is not necessary. It is sufficient if the parties were engaged in a "common scheme or had a tacit understanding." *Id.* (citing *United States v. Mickelson*, 378 F.3d 810, 821 (8th Cir. 2004)). Based on the evidence admitted by Peal, there was sufficient bases for finding that he and Nickens had a tacit, implicit agreement whereby she would allow him to distribute cocaine out of her residence. This conforms with Eighth Circuit precedents holding that knowingly storing drugs for distribution can be a sufficient basis for finding that an individual participated in a drug conspiracy. *See United States v. Gutierrez-Manzanarez*, 323 F.3d 613 (8th Cir. 2003); *United States v. Nunez*, 257 F.3d 758 (8th Cir. 2001); *United States v. O'Dell*, 204 F.3d 829 (8th Cir. 2000). Because the Indictment was supported by ample evidence, Peal's counsel was not deficient for advising him to plead guilty.

### E. The Superseding Indictment

Peal next submits several alleged points of error based on his counsel's failure to challenge the Superseding Indictment. None of these bases have merit because Peal pleaded guilty to Count I of the original Indictment--not the Superseding Indictment. The Court's record clearly reflects that the Government dismissed all portions of the Superseding Indictment during the sentencing hearing. *See* Court's Judgment & Commitment [Doc. # 31] noting that "Original Counts 2-4 and Superseding Counts 1s-4s were dismissed on motion of the Government." Therefore, Peal's fifth ground for relief is denied.

### F. Signatures on the Indictment

Peal also avers that his counsel was ineffective for failing to challenge the Indictments because they did not contain the required signatures. Peal's argument is meritless because the originally-filed Indictments do contain the requisite signatures. Therefore, his claim for ineffective assistance of counsel must fail.

### G. Names of Co-Conspirators

Finally, Peal challenges his counsel's conduct for failing to move to dismiss the Indictment because it does not identify his co-conspirators. Instead, the Indictment identifies the co-conspirators as "others, known and unknown." This comports with Eighth Circuit precedent and it is not necessary to identify co-conspirators by name in an Indictment, particularly where a jury can convict a defendant for conspiracy without ever learning the identity of the alleged co-conspirator[s]. *See United States v. Ramirez*, 350

F.3d 780, 784 (8th Cir. 2003) (defendant's conviction for conspiracy upheld even where the jury never learned the co-conspirator's identity).

Because Peal has not presented any evidence supporting his claims for ineffective assistance of counsel, the Court will deny his pending Motion.

**IV.     Conclusion**

Accordingly, it is hereby

ORDERED that Peal's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 [Doc. # 1] is DENIED.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

DATED:  September 29, 2005
Jefferson City, Missouri